IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2015 Session

# RICHARD GARNER v. COFFEE COUNTY BANK, ET AL.

**Appeal from the Circuit Court for Coffee County**
**No. 39584     Vanessa Jackson, Judge**

_____

**No. M2014-01956-COA-R3-CV – Filed October 23, 2015**
_____

Plaintiff and his former wife purchased a house together in 2002. The former wife moved out of the house with all of her belongings in 2009, and the house suffered damage from a fire in 2010. The former wife was a named insured on the house, and each of the insurance checks issued to cover property loss and living expenses was made payable to both Plaintiff and his former wife. The president of the bank that held a mortgage on the house had a separate business relationship with the former wife. According to Plaintiff, the bank president informed him that he could not have any of the insurance proceeds unless one-half was given to the former wife, which proceeds were used to pay down the former wife's separate and unrelated loan. The bank ultimately foreclosed on the house because the loan became delinquent. Plaintiff filed a complaint against the bank and president asserting conversion, wrongful foreclosure, and other related causes of action. The bank and the president filed a motion for summary judgment. Plaintiff did not file his opposition within the time prescribed by the procedural rules, and the trial court granted the bank and the president's motion for summary judgment. On appeal, we affirm the trial court's judgment in some respects and reverse the judgment in other respects. Plaintiff's deposition transcript that the trial court considered in ruling on the motion for summary judgment raised genuine issues of material fact that precluded summary judgment on several of the causes of action alleged.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Russell L. Leonard, Winchester, Tennessee, for the appellant, Richard Garner.

Shawn C. Trail and C. Brent Keeton, Manchester, Tennessee, for the appellees, Coffee County Bank and Ken Kirby.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Garner and Krista Garner purchased a house together in 2002 that was located in Hillsboro, Tennessee. They obtained a mortgage from Coffee County Bank (the "Bank"). Ken Kirby is the President of the Bank and assisted them in obtaining their mortgage. Ms. Garner moved out in March 2009, and Mr. Garner continued living in the house until it was destroyed by a fire in March 2010. According to Mr. Garner, Ms. Garner removed all of her personal property from the house when she moved out in 2009, with the result that all of the furniture and personal belongings that were in the house at the time of the fire belonged to him.

Both Mr. Garner and Ms. Garner were named insureds on the insurance policy that covered the house. Starting on or about March 8, 2010, the insurance company that wrote the policy began issuing checks, made payable to both Mr. Garner and Ms. Garner, to cover personal property losses, living expenses, and landscaping expenses. Mr. Garner did not believe Ms. Garner should receive any of the insurance proceeds paid out for personal property losses or living expenses because she was not living in the house at the time of the fire and did not lose any personal property as a result of the fire. However, Mr. Garner alleges that he was unable to cash the insurance checks without Ms. Garner's signature.

Mr. Garner asserts he was not in direct communication with Ms. Garner following the fire, but that Mr. Kirby held himself out as her representative. Mr. Garner contacted Mr. Kirby in an effort to communicate with Ms. Garner and to request that she sign the checks from the insurance company. According to Mr. Garner, Mr. Kirby told him that Ms. Garner would not sign any of the checks unless Mr. Garner gave her one-half of the checks' proceeds. Mr. Garner did not believe Ms. Garner was entitled to any money from the insurance company, but he needed the money, so he turned over one-half of each check to Ms. Garner.

Mr. Garner and Ms. Garner fell behind on their mortgage payments to the Bank. Mr. Garner asserts that when the payments were about ten months in arrears, Mr. Kirby agreed to allow Mr. Garner and Ms. Garner each to make five payments toward the arrearage in an effort to catch up on what they owed and get their payments back on track. When he

attempted to make these five payments at the Bank, however, Mr. Garner asserts that Mr. Kirby refused to accept his money. Instead, Mr. Garner alleges that Mr. Kirby, together with Ms. Garner, coerced Mr. Garner to sign a contract to sell the house for $90,000 less than it was worth. Mr. Garner asserts that the house was appraised for $305,000, but that the Bank ultimately foreclosed upon it, over his objection, and sold it for just $1 above the amount that was due on the mortgage, which was $199,000.

Mr. Garner initially filed a complaint on May 21, 2012, against the Bank, Mr. Kirby, and Ms. Garner. Mr. Garner filed an amended complaint on May 29, 2012. He asserted the following causes of action: civil conspiracy, wrongful foreclosure, wrongful conversion, trespass to chattel, violation of Tenn. Code Ann. § 47-18-104, breach of fiduciary duty, unjust enrichment, and intentional and negligent infliction of emotional distress. Mr. Garner sought compensatory damages in the amount of $91,547.11 and punitive damages in the amount of $250,000. The defendants filed a motion to dismiss Mr. Garner's claim for intentional and negligent infliction of emotional distress, which the trial court granted on September 17, 2012. Mr. Garner then voluntarily dismissed Ms. Garner from the lawsuit and proceeded against the Bank and Mr. Kirby.

On August 5, 2013, the Bank and Mr. Kirby (together, the "Defendants") filed a motion for summary judgment together with a statement of undisputed facts and supporting memorandum. Attached to the Defendants' motion was a Notice of Hearing indicating that the motion would be heard on Monday, October 14, 2013. Pursuant to Tennessee Rules of Civil Procedure 56.03 and 56.04, Mr. Garner was required to file his opposition to the Defendants' motion no later than five days before the hearing, which would have been by the close of business on October 7, 2013. *See* Tenn. R. Civ. P. 6.01 (when computing time that is fewer than eleven days, intervening weekend days are not included). However, Mr. Garner did not file any opposition papers or affidavits until October 8, 2013; the documents he filed were not signed, and the affidavits were neither notarized nor signed. Mr. Garner did not file properly signed and notarized documents until October 9, 2013, just 3 days before the hearing. As part of his opposition to the Defendants' motion for summary judgment, Mr. Garner moved to strike the Defendants' motion on the basis that their memorandum relied on "incompetent and hearsay testimony and facts which were not included in their Statement of Undisputed Facts." On October 11, 2013, the Defendants moved to strike Mr. Garner's response to their motion for summary judgment as well as the supporting affidavits because they were not timely filed.

## II. TRIAL COURT'S DECISION

The trial court held a hearing on the Defendants' motion for summary judgment on October 14, 2013, as scheduled. In an order entered on April 10, 2014, the court granted the

Defendants' motion. The court first addressed the Defendants' motion to strike Mr. Garner's opposition and supporting affidavits. Evidence was presented that Mr. Garner had suffered health problems, which the court acknowledged could explain the difficulty in filing Mr. Garner's affidavit on time. However, the court pointed out that Mr. Garner's attorney had more than two months to obtain an affidavit from Mr. Garner. If this were not feasible, the court explained, his attorney could have filed a motion seeking additional time to obtain and file Mr. Garner's affidavit. In any event, the court found that Mr. Garner's illness did not excuse the late filing of the opposition and other supporting documents. Thus, the trial court granted the Defendants' motion to strike and did not consider Mr. Garner's response to the Defendants' statement of undisputed material facts or the affidavits offered in support of his opposition.

In ruling on the Defendants' motion for summary judgment, the trial court explained that it relied not only on the Defendants' statement of undisputed material facts, but also on the depositions of Mr. Kirby and Mr. Garner that the Defendants filed in support of their motion. The court addressed each of Mr. Garner's causes of action individually and explained its rationale for concluding that the Defendants' statement of undisputed material facts and the depositions failed to support any of Mr. Garner's claims. In addition, the court found that Mr. Garner's claim for violation of the Tennessee Consumer Protection Act was barred by the one-year statute of limitation governing that claim.

Mr. Garner filed a motion to alter or amend the trial court's judgment. In addition to taking the position that the trial court erred in striking his late-filed documents in opposition to the Defendants' motion for summary judgment, Mr. Garner argued that the trial court erred by failing to rule on his motion to strike the Defendants' motion for summary judgment, which, if granted, would have obviated his need to respond to the Defendants' motion altogether. The trial court denied Mr. Garner's motion to alter or amend, explaining that Mr. Garner's motion to strike did not relieve him of the obligation to file a timely response to the Defendants' motion for summary judgment.

Mr. Garner timely filed a notice of appeal. On appeal, Mr. Garner contends the trial court erred in granting the Defendants' motion for summary judgment. He contends the court erred by (1) failing to treat his verified complaint as an affidavit in opposition to the Defendants' motion for summary judgment; (2) striking his late-filed opposition to the Defendants' motion for summary judgment because the Defendants were not unduly prejudiced by the late filing; and (3) failing to rule on his motion to strike.

4

III. ANALYSIS

A. Complaint as Affidavit

The first issue we will address is Mr. Garner's argument that the trial court erred by failing to consider his amended complaint as an affidavit in opposition to the Defendants' motion for summary judgment. Tennessee Rule of Civil Procedure 56.06 states, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Based on this rule, Mr. Garner asserts that the trial court should have treated his amended complaint, which he asserts was verified, as an affidavit for the purpose of opposing the Defendants' motion for summary judgment and showing that there are genuine issues of material fact.

Mr. Garner did in fact sign an oath on the final page of his amended complaint, and he had his signature notarized. The oath he signed was as follows:

> **RICHARD GARNER** makes oath that he has read the foregoing Amended Complaint and that the statements made therein are true and correct to the best of his knowledge, information, and belief and that this Amended Complaint is not brought out of levity nor by collusion with the defendant but in truth and sincerity for the causes mentioned therein.

Mr. Garner is correct that, as a rule, a verified complaint "has the force and effect of an affidavit" when considered in opposition to a motion for summary judgment. *Muse v. First People's Bank of Tenn.*, No. E2005-02869-COA-R3-CV, 2007 WL 845893, at *7 (Tenn. Ct. App. Mar. 21, 2007); *accord Bright v. Gue*, No. E2007-00127-COA-R3-CV, 2008 WL 440457, at *9 (Tenn. Ct. App. Feb. 19, 2008). Thus, verified facts that are favorable to an opponent of a motion for summary judgment are to be treated as true when a court determines whether the movant is entitled to summary judgment. *Hart v. Joseph Decosimo*

*and Co., LLP*, 145 S.W.3d 67, 76 (Tenn. Ct. App. 2004).

In this case, however, Mr. Garner did not verify that the facts contained in his amended complaint were true; rather, he made an oath that the statements were "true and correct to the best of his knowledge, information, and belief." The Court of Appeals has ruled that when this language is used in an oath attached to a complaint, the complaint does not meet the standards for affidavits that are required by Rule 56.06, and, therefore, cannot be treated as an affidavit for purposes of opposing a motion for summary judgment. *Phung v. Case*, No. 03A01-9811-CV-00388, 1999 WL 544650, at *5 (Tenn. Ct. App. July 28, 1999). The *Phung* court wrote:

> [I]t is clear that the allegations in the plaintiff's amended complaint were not based exclusively upon her personal knowledge. In light of her oath, it is impossible to determine which allegations were founded upon personal knowledge, and which were merely statements based upon what she "believed" to be true. This being the case, we cannot say that the verified complaint meets the standards required of affidavits by Rule 56.06, Tenn. R. Civ. P. We therefore do not agree with the plaintiff that the amended complaint is the "functional equivalent of an affidavit."

*Id*.

The Tennessee Supreme Court has explained that "[a] Petitioner's own belief does not constitute 'such facts as would be admissible in evidence' as required by Rule 56.0[6]" and cannot be considered as evidence. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978) (quoting what is now TENN. R. CIV. P. 56.06); *see Yater v. Wachovia Bank of Ga., N.A.*, 861 S.W.2d 369, 373 (Tenn. Ct. App. 1993) (holding plaintiff's "presumption," as set forth in affidavit, insufficient to satisfy Rule 56.06 requirement that statements be based on matters personally known to affiant). The reason for this rule that "'[b]elief, no matter how sincere, is not equivalent to knowledge.'" *Keystone Ins. Co. v. Griffith*, 669 S.W.2d 364, 366 (Tenn. Ct. App. 1983) (quoting *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949)).

The oath attached to the verified complaint in *Phung v. Case* contained the same "knowledge, information, and belief" language that Mr. Garner used in his oath. *Phung*, 1999 WL 544650, at *5. As a result, Mr. Garner's amended complaint does not qualify as an affidavit for purposes of opposing the Defendants' motion for summary judgment.[1]

---

[1]Interestingly, the trial court stated at the hearing on August 11, 2014, that it did, in fact, consider Mr. Garner's amended complaint as an affidavit in ruling on the Defendants' motion for summary judgment:

B. <u>Genuine Issues of Material Fact</u>

When a defendant moves for summary judgment, the moving party must show that the plaintiff's case presents no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. TENN. R. CIV. P. 56.04. The moving party can satisfy its burden by either submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrating that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101. When ruling on a motion for summary judgment, trial courts "must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL Assoc., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *accord Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). Summary judgment is not appropriate unless both the facts and inferences therefrom "permit a reasonable person to reach only one conclusion." *Staples*, 15 S.W.3d at 89. As the Supreme Court explained in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), "[I]f there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211. A trial court's decision to grant or deny a motion for summary judgment is a matter of law which we review de novo, without any presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004)); *Walker v. Bradley Cnty. Gov't*, 447 S.W.3d 877, 879 (Tenn. Ct. App. 2014).

Rule 56.03 requires the moving party to file a "concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Then,

> Subject to the moving party's compliance with Rule 56.03, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

TENN. R. CIV. P. 56.04.

Mr. Garner asserted eight different causes of action against the Defendants, one of which was dismissed before the motion for summary judgment was filed. We will review the

---

"With regard to the consideration of the complaint as an affidavit, the court considered it as an affidavit." Despite this, however, the trial court concluded: "[C]onsidering . . . all of the information that was filed, not only the statements of the undisputed material facts but also the depositions that were filed in support of the motion, the court found that the motion for summary judgment was well taken and should be granted."

Defendants' statement of undisputed material facts and then consider each of Mr. Garner's remaining causes of action to determine whether the trial court erred in granting summary judgment on each count. The Defendants submitted the deposition transcripts of Mr. Garner and Mr. Kirby in support of their motion. As explained above, Mr. Garner's amended complaint is not entitled to be considered as an affidavit in opposition to the Defendants' motion. However, if Mr. Garner's deposition testimony raises a genuine issue of material fact with regard to any of the Defendants' statements of undisputed material facts, the trial court's judgment will not be able to stand with regard to the particular cause of action at issue.

The Defendants' statement of undisputed material facts was limited to the following:

1.      The involvement of the parties with the subject insurance checks would have been prior to May 21, 2011, as the last time that there was any discussions between Krista Garner, Richard Garner, and Ken Kirby was on March 25, 2011.

2.      Ken Kirby was the only person at Coffee County Bank that Richard Garner discussed the insurance checks with.

3.      There would have only been one check at issue, which was for $44,831.43, that Richard Garner would have ever discussed with Kenneth Kirby.

4.      Richard Garner does not know what went on in the separate rooms between Krista Garner and Ken Kirby.

5.      Richard Garner cannot sufficiently identify who allegedly did what actions to make this a "wrongful foreclosure."

6.      There was no "shocking inadequate price," as the subject property sold for enough to pay off his loan, and there was no deficiency judgment.

7.      Coffee County Bank foreclosed on the subject property when payments were not made, and if a loan through a bank is secured by collateral and the note is not paid, then the bank will repossess the collateral.

8.      No one at Coffee County Bank told Richard Garner not to go through with the subject purchase/sale agreement.

8

9. The checks were all divided 50/50 between Richard Garner and Krista Garner.

10. If Ken Kirby had not assisted Richard Garner and Krista Garner, Richard Garner probably would not have been able to have negotiated the checks and in turn, would not have received any monies from the checks.

11. The only way that Richard Garner knew Ken Kirby was in a professional business relationship, i.e., it was only as a banker and not as a friend.

12. There was insurance on the subject house and contents wherein Richard Garner and then wife and now ex-wife Krista Garner were the beneficiaries/named insured under that insurance policy. They both were insured on the property and contents because they each owned a one-half interest in the house and [were] insured through Cotton States Insurance.

13. The buyer of the property attempted to get an extension on the subject contract because he had his loan approved through First Vision and that Richard Garner refused to extend the contract.

14. The property was in a foreclosure status when Richard Garner refused to extend the contract.

15. The foreclosure was postponed because of the contract for sale but when the contract was not extended by Richard Garner, Coffee County Bank proceeded forward with the foreclosure.

### 1. Conversion and Trespass to Chattels

The first causes of action we address are Mr. Garner's claims for conversion and trespass to chattels. The tort of conversion is "'the appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right.'" *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008) (quoting *Barger v. Webb*, 391 S.W.2d 664, 665 (1965)). "A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing RESTATEMENT (SECOND) OF TORTS § 217(b)). Mr. Garner asserted in his amended complaint that Ms. Garner was not entitled to any of the insurance proceeds that were issued to cover living expenses and personal losses suffered as a result of the fire because Ms. Garner was not

9

living in the house when the fire occurred, and she did not have any personal items in the house that were damaged by the fire. Mr. Garner further alleged that the Defendants "exercised dominion and control over Plaintiff's insurance proceeds when Kirby strong armed Plaintiff into signing over half of the insurance proceeds to Krista so that she could use the money to pay the mortgage on her son's home, which was her residence."

Mr. Garner does not dispute the Defendants' statements numbered 9, 10, and 12, which all relate to the insurance checks at issue. The truth of these statements, however, does not support the Defendants' position that they are entitled to summary judgment with respect to Mr. Garner's claims for conversion and trespass to chattels. Mr. Garner testified at his deposition that Mr. Kirby was actively involved in making sure Ms. Garner received one-half of each check from the insurance company that was issued to cover property loss and living expenses following the fire. Thus, Mr. Garner disputes the Defendants' statement numbered 3. Mr. Garner testified as follows when he was questioned by the Defendants' attorney:

> Q: What is briefly the substance of the testimony you intend to call Ken Kirby in regard to?
>
> A: Well he was a party to helping her with the checks.
>
> . . . .
>
> Q: You said that, yes, you did ask Ken Kirby to help you get Krista to sign the checks. Did he help you?
>
> A: No, he really didn't. Well he did help me get the checks signed, but he didn't get them signed like I wanted them signed because I wanted all of the money which I was entitled to. . . . I had to give her half of the check for her to sign it. And even when you look over here on living expenses, I had to give her half of that.
>
> Q: Okay.
>
> A: And she was living somewhere else.
>
> . . . .

Mr. Garner testified as follows in response to questions by his attorney:

10

Q: Did Mr. Kirby tell you that if you didn't sign those checks and agree to give Krista half that you'd get nothing?

A: That's what he said most of the time.

Q: Did Mr. Kirby tell you that you had to agree to give Krista half –

A: Right.

Q: - - of each of those checks?

A: Yes.

. . . .

Q: Did you feel that Mr. Kirby was telling you what you had to do?

A: He was kind of forcing me into what I had to do or I wasn't going to get no check cashed.

. . . .

Q: Did Mr. Kirby ever tell Krista what to do with the checks in your presence?

A: He did a lot of times. He told her that, you know, he would do, you know, take money out for her loan. I've heard him tell her that.

. . . .

A: On March 25th Mr. Kirby went and cashed the checks and brought money back and he made the statement to Krista, I have took your house payments out of your part.

In granting the Defendants' motion for summary judgment with respect to these two counts, the trial court wrote:

Plaintiff asserts that Defendants wrongfully converted insurance proceeds that belonged to Plaintiff and the Defendants committed the tort of trespass to chattels. To maintain his claim for conversion, the Plaintiff must be

11

able to prove that (1) the Defendants appropriated Plaintiff's insurance proceeds for their use and benefit; (2) Defendants intentionally exercised dominion over the Plaintiff's insurance proceeds; and (3) Defendants acted in defiance of Plaintiff's rights to the insurance proceeds. To maintain his claim for trespass to chattels, the Plaintiff must be able to prove that Defendants wrongfully interfered with or injured Plaintiff's property (*i.e. the insurance proceeds*) causing actual damage to the property or depriving the Plaintiff of its use for a substantial period.

The undisputed facts establish that (1) Cotton States Insurance Company issued several checks jointly payable to Richard Garner and Krista Garner for losses related to a fire and a break-in at the property located at 5539 Prairie Road, Hillsboro, Tennessee; (2) both Richard Garner and Krista Garner endorsed the checks in question; (3) Richard Garner received one-half of the proceeds from each check, and Krista Garner received one-half of the proceeds from each check. The undisputed facts do not support the Plaintiff's contentions that (1) he was entitled to all of the proceeds from the checks in question which were issued by Cotton States Insurance Company; (2) he was coerced or pressured by Ken Kirby to equally divide the insurance proceeds with Krista Garner; or (3) Ken Kirby and Krista Garner conspired to interfere with or deprive the Plaintiff of his alleged right to all of the insurance proceeds. As a matter of law, the undisputed facts and depositions do not support the Plaintiff's allegation that Defendants appropriated any insurance proceeds that belonged to him, that Defendants acted in defiance of Plaintiff's rights to the insurance proceeds, that the Defendants wrongfully interfered with the Plaintiff's alleged right to the insurance proceeds or that Defendants deprived the Plaintiff of the use of said insurance proceeds. Thus, the Defendants' Motion for Summary Judgment on the Plaintiff's claims based on conversion and trespass to chattels should be granted.

(Emphasis in original.)

We disagree with the trial court's analysis. When ruling on a motion for summary judgment, the court must decide whether the undisputed facts show that the parties moving for summary judgment, the Defendants herein, are entitled to judgment as a matter of law, not whether the undisputed facts support the plaintiff's contentions. As the Supreme Court explained in *Byrd v. Hall*:

The court is not to "weigh" the evidence when evaluating a motion for summary judgment. The court is simply to overrule the motion where a

12

genuine dispute exists as to any material fact. The phrase "genuine issue" contained in Rule 56.03 refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts.

*Byrd v. Hall*, 847 S.W.2d at 211 (citations omitted).

Mr. Garner's deposition testimony shows that material facts are at issue concerning (1) the ownership of the personal property that was damaged in the fire; (2) whether Mr. Garner and Ms. Garner both suffered living expense losses as a result of the fire; and (3) the extent of Mr. Kirby's involvement in the negotiation and disbursement of the insurance proceeds. "[S]ummary judgment should not be granted when the material facts are disputed, or when more than one conclusion or inference can reasonably be drawn from the facts." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010) (citing *Green v. Green*, 293 S.W.3d 493, 513-14 (Tenn. 2009) (further citation omitted)). As the *Trost* Court explained, "A summary judgment motion should be denied if there is any reasonable doubt regarding whether a genuine issue of material fact exists." *Id.* (citing *Green*, 293 S.W.3d at 514).

Because we conclude that Mr. Garner's deposition testimony raises genuine issues of material facts insofar as Mr. Garner's claims for conversion and trespass to chattels are concerned, the Defendants have failed to show they are entitled to judgment on those issues as a matter of law. Accordingly, we reverse the trial court's grant of summary judgment to the Defendants on these two issues.

### 2. Unjust Enrichment

In his claim for unjust enrichment, Mr. Garner asserted that the Defendants were unjustly enriched at his expense "by their wrongful acts of depriving Plaintiff of half of his insurance proceeds and . . . using them for their own benefit as in the case of Krista and applying them to a loan which is held by the Bank." To succeed on his unjust enrichment claim, Mr. Garner must show "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

During his deposition, Mr. Garner testified regarding his claim for unjust enrichment as follows:

Q:     In your complaint, you state that Ken Kirby and Coffee County Bank have been unjustly enriched. In your own words, please, explain to me how

13

you feel they have been unjustly enriched.

. . . .

A:     By Ken Kirby telling Krista what to do all the time.

Q:     How did Ken Kirby benefit from all of that?

A:     I don't know.  I guess he was doing it to pay for Krista's other house that he gave her a loan on.

Q:     How did Coffee County Bank benefit?

A:     Well they were benefitting by getting their payments paid.

The trial court granted the Defendants summary judgment on Mr. Garner's unjust enrichment claim, writing:

> Plaintiff alleges in his Amended Complaint a claim of unjust enrichment related to the insurance proceeds.  Plaintiff asserts that Coffee County Bank was unjustly enriched when Krista Garner applied the funds she received from checks issued by Cotton States Insurance Company to another loan owed by her to the Bank and secured by property owned by her son.  In essence, the Plaintiff contends that Ken Kirby assisted Krista Garner in obtaining one-half of the insurance proceeds by coercing Richard Garner into endorsing these checks and giving Ms. Garner one-half of the proceeds so that she could apply the proceeds to her other loan owed to the Bank.  The undisputed facts and depositions do not establish that Ken Kirby coerced or pressured the Plaintiff into dividing the insurance proceeds equally with Krista Garner for the purpose of applying Mr. Garner's one-half of the funds to another loan.  The Plaintiff has provided no evidence that the Defendants received a benefit under circumstances that would make it inequitable to retain the benefit.  Therefore, the Defendants' Motion for Summary Judgment on the Plaintiff's claim for unjust enrichment should be granted.

As was the case when addressing the trial court's analysis with regard to Mr. Garner's conversion and trespass to chattels claims, we disagree with the trial court's analysis of Mr. Garner's unjust enrichment claim.  Rather than determining whether the undisputed facts showed that the Defendants were entitled to judgment as a matter of law on the issue of unjust enrichment, the trial court erroneously considered whether the undisputed facts,

14

considered along with Mr. Garner's deposition testimony, proved Mr. Garner's claim. Mr. Garner testified during his deposition that the Bank and Mr. Kirby received a benefit they did not deserve when one-half of the proceeds Mr. Garner testified belonged exclusively to him was used to pay down a separate loan the Bank had made to Ms. Garner. Mr. Garner's testimony raises a genuine issue of material fact with regard to Mr. Garner's unjust enrichment claim. For this reason, we reverse the trial court's decision granting summary judgment to the Defendants on this claim.

### 3. Civil Conspiracy

To prevail on his civil conspiracy claim, Mr. Garner was required to show "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing *Morgan v. Brush Wellman, Inc.*, 165 F.Supp.2d 704, 720 (E.D. Tenn. 2001). In support of his civil conspiracy claim, Mr. Garner asserted that "the Defendants agreed between and among themselves to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff whereby Kirby acted as Krista's representative . . . ." Mr. Garner then identified specific acts in which Ms. Garner and Mr. Kirby engaged in furtherance of this claim.

In granting the Defendants' summary judgment motion as to this claim, the trial court wrote:

> In order to prevail on his claim for civil conspiracy, the Plaintiff must establish that the Defendants were part of a common plan or design to accomplish an unlawful purpose or to commit a tort which resulted in damage to the Plaintiff. The Court has ruled in favor of the Defendants on the Plaintiff's claims for unlawful foreclosure, conversion, trespass to chattels, breach of fiduciary duty, violation of the Tennessee Consumer Protection Act and unjust enrichment. As a result, there is no unlawful purpose or tort committed by the Defendants on which the Plaintiff's claim for civil conspiracy can be based. The Defendants' Motion for Summary Judgment on the Plaintiff's claim of civil conspiracy should be granted.

Based on our reversal of the trial court's judgment with respect to Mr. Garner's claims for conversion, trespass to chattels, and unjust enrichment, we conclude that the trial court erred in granting the Defendants' motion with respect to Mr. Garner's claim for civil conspiracy. The Defendants' statement of undisputed facts does not address the elements of

this claim per se, and we find the trial court erred in determining that the Defendants have shown there is no issue as to any material fact with respect to this claim or that they are entitled to judgment as a matter of law.

### 4. Unlawful Foreclosure

Wrongful foreclosure can be asserted as an affirmative defense by a mortgagor in an unlawful detainer action brought by a purchaser of property in foreclosure, *Citimortgage, Inc. v. Drake*, 410 S.W.3d 797, 807-08 (Tenn. Ct. App. 2013), or as a primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust, *Overholt v. Merchants & Planters Bank*, 637 S.W.2d 463, 463-67 (Tenn. Ct. App. 1982). In the case at bar, Mr. Garner bases his wrongful foreclosure action on an agreement he claims Mr. Kirby made with him and Ms. Garner. Mr. Garner stated in his complaint and testified during his deposition that Mr. Kirby entered into a verbal agreement with him whereby the Bank would not foreclose on the house if Mr. Garner and Ms. Garner each made five payments on their mortgage, thereby bringing their loan current. However, when Mr. Garner tendered his payments to the Bank, he asserts that Mr. Kirby refused to abide by their earlier agreement and did not accept Mr. Garner's money. Mr. Garner alleges that the Defendants' refusal to accept his money resulted in erroneous fees and charges, causing Mr. Garner to fall further behind in his payments, and ultimately led to the foreclosure of his and Ms. Garner's house. Mr. Garner also asserts the Bank's legal counsel who was conducting the foreclosure sale instructed the purchaser to bid only $1 over the Bank's bid, which tainted the entire foreclosure process, rendering it void.

In granting the Defendants' motion for summary judgment with respect to this claim, the trial court wrote:

> The undisputed facts and depositions of Ken Kirby and Richard Garner establish that Richard Garner and Krista Garner were obligors on a loan payable to Coffee County Bank, secured by a Deed of Trust encumbering real property owned by the Garners located at 5539 Prairie Plains Road, Hillsboro, Tennessee. Richard Garner and Krista Garner failed to make timely loan payments to Coffee County Bank. The loan was in default, and foreclosure proceedings were instituted by the Bank to sell the property encumbered by the Deed of Trust. The Defendants postponed the foreclosure proceedings while the Garners attempted to sell the subject property. Richard Garner and Krista Garner could not agree on a sales price for the property after an extension of a sales contract was requested by the buyer. Richard Garner would not agree to extend the contract at a lower sales price. When the contract to sell the property to said buyer was not extended, the postponed foreclosure action was

16

reinstituted. The property sold for a sum greater than the amount owed to Coffee County Bank, and there was no deficiency owing by Richard Garner to Coffee County Bank. Mr. Garner consulted with a realtor in determining whether to extend the sales contract, and he was represented by an attorney throughout the foreclosure proceedings. He followed his attorney's advice in allowing the foreclosure sale to occur.

At the foreclosure sale, a prospective purchaser was told his bid must be at a minimum more than one dollar over the Bank's opening bid amount, and the Bank reserved the right to make subsequent bids. This was an accurate statement in response to the prospective purchaser's question.

The Court finds that the undisputed material facts and depositions do not support the Plaintiff's claim for unlawful foreclosure.

Mr. Garner asserted in his amended complaint and in his deposition testimony that Mr. Kirby agreed not to foreclose on the house if he could bring the loan current and that Mr. Kirby and the Bank refused to accept his money when he attempted to pay down the note in an effort to bring the loan current. The Defendants' statement of undisputed material facts does not address this alleged agreement or the Bank's alleged refusal to accept Mr. Garner's money prior to the foreclosure. We conclude, therefore, that there is a genuine material issue regarding whether or not the foreclosure was wrongful. *See Overholt*, 637 S.W.2d at 466-67 (discussing different scenarios involving claims for wrongful foreclosure). As a result, we reverse the trial court's decision to award the Defendants summary judgment on Mr. Garner's wrongful foreclosure claim.[2]

### 5. Breach of Fiduciary Obligation

In his amended complaint, Mr. Garner includes a claim for breach of fiduciary duty. In support of this claim, Mr. Garner asserts that Mr. Kirby, "acting as an agent of the Bank exercised dominion and control over Plaintiff when he insisted that Plaintiff pay Krista one half of the insurance proceeds which were due only to Plaintiff." Mr. Garner asserts that Mr. Kirby and the Bank owed a fiduciary duty towards him and that he had no choice but to follow Mr. Kirby's instructions to share the insurance money with Ms. Garner because he badly needed the money at that time. He was doing whatever he could to prevent his

---

[2]We do not address Mr. Garner's specific allegation that the Bank's instruction to the ultimate purchaser regarding the amount to bid tainted the foreclosure proceeding overall because we reverse the trial court's dismissal of Mr. Garner's unlawful foreclosure cause of action. Mr. Garner will have an opportunity to present proof that the Bank tainted the foreclosure proceeding when the claim is tried.

property from being foreclosed upon, and this meant following Mr. Kirby's instructions with regard to the insurance proceeds so that he had some money with which to pay his mortgage obligations. Mr. Garner further asserts that Mr. Kirby owed him a fiduciary duty to accept the money he tendered to the Bank to bring his mortgage current and avoid foreclosure proceedings and that Mr. Kirby breached this duty when he refused to accept Mr. Garner's payments. Finally, Mr. Garner asserts that the Bank breached its duty during the foreclosure proceedings when it instructed the ultimate purchaser to bid just $1 over the Bank's bid because the Bank was obligated "to make sure that the bidding was conducted in a proper manner so as to bring the highest and best bid for cash."

The trial court awarded the Defendants summary judgment with respect to Mr. Garner's breach of fiduciary obligation claim, writing:

> Tenn. Code Ann. § 45-1-127 clearly states that financial institutions and their officers and employees shall not be deemed or implied to be acting as fiduciary or to have a fiduciary obligation to the institutions' customers or other parties, other than shareholders, unless there is a written agreement between the parties under which the financial institution agrees to act as a fiduciary. The Complaint does not allege a written agreement under which Coffee County Bank or Ken Kirby undertook fiduciary obligations on behalf of the Plaintiff, nor do the depositions and undisputed material facts establish the existence of a written fiduciary agreement. Thus, the alleged action by Ken Kirby, while acting in his capacity as an employee of the Bank, does not give rise to a fiduciary relationship between the Defendants, Coffee County Bank and Ken Kirby, and the Plaintiff.

Tennessee Code Annotated section 45-1-127 is clear, as the trial court wrote, that without a written agency or trust agreement between Mr. Garner and the Bank or Mr. Kirby, there is no fiduciary relationship between Mr. Kirby and Mr. Garner. Mr. Garner does not allege the existence of any agreement or contract in which either the Bank or Mr. Kirby agreed to act or perform in a fiduciary capacity on his behalf. In addition, nothing in Mr. Garner's amended complaint suggests that Mr. Garner and Mr. Kirby shared any sort of confidential relationship upon which a fiduciary relationship could be based. *See Foster Business Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *7-8 (Tenn. Ct. App. Jan. 15, 2009) (general discussion of fiduciary relationships). Accordingly, we affirm the trial court's decision to award the Defendants summary judgment on this claim.

6. Tennessee Consumer Protection Act Violation

The trial court found that Mr. Garner's claim asserting a violation of the Tennessee

Consumer Protection Act was barred by the applicable statute of limitation. In his amended complaint, Mr. Garner asserted that Mr. Kirby engaged in unfair and deceptive business practices, as defined by Tenn. Code Ann. § 47-18-104, and that he suffered damages as a direct and proximate result thereof.

An individual asserting a violation of the Tennessee Consumer Protection Act must file his or her action within one year from the individual's discovery of the unlawful act or practice. Tenn. Code Ann. § 47-18-110. Mr. Garner testified during his deposition that his last conversation with anyone from the Bank was on March 25, 2011, and he stated that Mr. Kirby was not present at the foreclosure proceeding. Thus, because Mr. Garner filed his complaint more than one year following any allegedly unfair or deceptive business practices by Mr. Kirby, we agree with the trial court's conclusion that Mr. Garner's claim for a violation of the Tennessee Consumer Protection Act is barred by the statute of limitation and affirm the trial court's determination that the Defendants are entitled to summary judgment with respect to this claim.

C. Mr. Garner's Motion to Strike the Defendants' Motion for Summary Judgment

Mr. Garner next contends the trial court erred by ruling that its grant of the Defendants' motion for summary judgment rendered his motion to strike moot. The trial court did not explicitly rule on his motion to strike as Mr. Garner represents, but the court's decision on the Defendants' motion for summary judgment effectively rejected Mr. Garner's motion to strike.

The trial court held a hearing on October 14, 2013, which the Defendants scheduled to argue in support of their motion for summary judgment, and then held another hearing on August 11, 2014, which Mr. Garner scheduled to argue in support of his motion to alter or amend the trial court's order granting the Defendants' motion for summary judgment. At the hearing in 2013, Mr. Garner argued both in support of his motion to strike as well as in opposition to the Defendants' motion for summary judgment. At the hearing in 2014, Mr. Garner revisited his motion to strike that the court had not ruled upon and argued that if the court had granted his motion to strike, he would not have been required to file a response to the Defendants' motion for summary judgment. At the latter hearing, the trial court told Mr. Garner, "I think you could probably infer from the fact that I ruled on the motion for summary judgment . . . that I was not going to grant the motion to strike . . . ." The court did not issue a written order denying Mr. Garner's motion to strike.

On appeal, Mr. Garner relies on Tenn. R. Civ. P. 12.06, entitled "Motion to Strike," in support of his position. That rule reads:

19

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 30 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

Mr. Garner did not mention Rule 12.06 in his motion to strike, and we find this rule does not apply to Mr. Garner's motion to strike because (1) the motion was not filed in response to a pleading[3], and (2) the motion was not based on an "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *See Curve Elementary Sch. Parent & Teachers' Org. v. Lauderdale Cnty. Sch. Bd.*, 608 S.W.2d 855, 857 (Tenn. Ct. App. 1980) (motion to strike filed pursuant to Rule 12.06 must allege a pleading contains an insufficient defense or redundant, immaterial, impertinent, or scandalous matter). Instead, Mr. Garner based his motion to strike on the argument that the Defendants' supporting memorandum was "littered with fatal evidentiary deficiencies, including but not limited to, incompetent hearsay testimony and facts which were not included in their Statement of Undisputed Facts."

Moreover, as a practical matter, Mr. Garner did not move to strike the Defendants' motion for summary judgment in a timely manner. The Defendants filed their motion for summary judgment on August 5, 2013. The notice of hearing attached to their motion indicated that the motion would be heard on October 14, 2013, over two months later. Mr. Garner did not file his motion to strike until October 9, 2013, and he did not attach a notice to his motion indicating when his motion was scheduled to be heard. He would not have been able to schedule it before October 14, however, because the Rules of Civil Procedure require motions and notices thereof to be served "not later than five (5) days before the time specified for the hearing." TENN. R. CIV. P. 6.04.[4] In addition, the local rules for Coffee County Circuit Court require that hearings must be scheduled more than five days after a motion is filed. TENN. 14TH J. DIST. CIR. CT. R. II. Thus, by the time Mr. Garner would have been able to schedule a hearing on his motion to strike, the trial court would have already heard arguments on the Defendants' motion for summary judgment.[5] Mr. Garner was served

---

[3]"Pleadings" are limited to complaints and answers and do not include motions. TENN. R. CIV. P. 7.01.

[4]In computing a period of time less than eleven days, as here, "intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." TENN. R. CIV. P. 6.01. Thus, Mr. Garner would have had to file his motion to strike and notice of hearing before Monday, October 7, 2013, if he wanted to schedule a hearing before Monday, October 14, 2013.

[5]In any event, the trial court entertained argument on Mr. Garner's motion to strike during its hearing on the Defendants' motion for summary judgment. The trial court implicitly denied Mr. Garner's motion to strike when the court granted the Defendants' motion for summary judgment. The trial court did not, as Mr.

with the Defendants' motion for summary judgment more than two months before the hearing was scheduled; he had plenty of time in which to file a motion to strike and to schedule it to be heard in advance of the hearing on the Defendants' motion for summary judgment. The trial court is not to be blamed for Mr. Garner's tardiness and failure to comply with the scheduling rules.

### D. Plaintiff's Late-Filed Opposition Papers

Mr. Garner's final argument is that his late-filed papers in opposition to the Defendants' motion would not have caused any undue prejudice to the Defendants and that, therefore, the trial court erred in refusing to consider them in ruling on the Defendants' motion. Whether or not the Defendants would suffer under prejudice, however, is not the issue. Rule 56.03 of the Tennessee Rules of Civil Procedure clearly states that a "party opposing [a] motion for summary judgment *must*, not later than five days before the hearing, serve and file a response to each fact set forth . . . ." (Emphasis added.) As this Court explained in *Williams v. Watson*, No. E2005-02403-COA-R3-CV, 2007 WL 187925 (Tenn. Ct. App. Jan. 25, 2007), "the requirements of Tennessee Rules of Civil Procedure 56.03 are mandatory . . . ." *Id.* at *9. A trial court may exercise its discretion to waive the rule's requirements in an appropriate situation. *Cox v. Tenn. Farmers Mut. Ins. Co.*, 297 S.W.3d 237, 244 (Tenn. Ct. App. 2009); *Owens v. Bristol Motor Speedway, Inc.,* 77 S.W.3d 771, 774-75 (Tenn. Ct. App. 2001). However, an appellate court is not permitted to interfere with the trial court's discretionary decision absent a showing that the trial court abused its discretion. *Williams*, 2007 WL 187925, at *11.

Mr. Garner's attorney contends he filed Mr. Garner's opposition papers late as a result of excusable neglect, but he does not explain how his neglect was excusable. Mr. Garner, apparently, had health issues that prevented him from reviewing and signing his affidavit in the ten days before it was due to be filed. However, that does not explain why his attorney did not file a motion seeking additional time to file Mr. Garner's affidavit or why his attorney was not able to file the other opposition papers in a timely fashion. Based on the facts of this case, Mr. Garner has failed to show that the trial court's refusal to consider his late-filed opposition papers constituted an abuse of its discretion.

CONCLUSION

The trial court's judgment is affirmed in part, reversed in part, and remanded. We affirm the trial court's decision granting the Defendants' motion for summary judgment with regard to the following causes of action: violation of Tenn. Code Ann. § 47-18-104 and

Garner contends, declare that his motion to strike was "moot."

breach of fiduciary duty. We reverse the trial court's decision granting the Defendants' motion for summary judgment with regard to the following causes of action: conversion, trespass to chattels, unjust enrichment, civil conspiracy, and wrongful foreclosure. We affirm the trial court's decision not to consider Mr. Garner's late-filed response in opposition to the Defendants' motion for summary judgment. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal shall be assessed in equal parts against the parties, so that Richard Garner shall pay half of the costs and Coffee County Bank and Ken Kirby shall pay half of the costs.

_____
ANDY D. BENNETT, JUDGE